NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Appellant,

v.

PENDREY et al., Appellees.

[Cite as *Nationwide Mut. Fire Ins. Co. v. Pendrey* (1997), 123 Ohio App.3d 91.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–96–415.

Decided Sept. 30, 1997.

---

*Jean Ann Sieler*, for appellant.

*John B. Fisher* and *Patricia Horner*, for appellees Pendreys.

*Joseph W. Westmeyer, Jr.*, for appellees Deckers.

---

*Per Curiam.*

This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas which declared that plaintiff-appellant, Nationwide Mutual Fire Insurance Company ("Nationwide"), shall provide legal representation to defendant-appellant, Harvey Decker, for legal action arising out of an altercation on March 10, 1995. The court further declared that Nationwide would be required to pay a judgment rendered against Decker only if the judgment was based solely upon Decker's negligence. From that judgment, Nationwide raises the following assignments of error:

"I. The trial court erred in failing to grant judgment to plaintiff–appellant Nationwide Mutual Fire Insurance Company following the coverage trial to the bench or upon motion for summary judgment where the undisputed evidence was that Decker, its insured, during the course of a bar fight, wielded an 11-inch" hunting knife in close proximity to decedent Lawrence Pendrey, resulting in a single, mortal stab wound to the heart, such that intent to cause harm should be inferred as a matter of law, and judgment finding no duty to indemnify and defend Decker should be entered.

"II. The trial court erred in failing to grant judgment to plaintiff–appellant Nationwide Mutual Fire Insurance Company following the coverage trial to the bench or upon motion for summary judgment where the sole, credible evidence was that the insured ought to know harm would result from wielding the 11-inch" hunting knife within the exclusion to the policy of insurance, and judgment finding no duty to indemnify and defend Decker should be entered.

"III. The trial court erred in failing to grant judgment to plaintiff–appellant Nationwide Mutual Fire Insurance Company following the coverage trial to the bench or upon motion for summary judgment where the sole, credible evidence was that injury was substantially certain to result from wielding the 11-inch" hunting knife with decedent Lawrence Pendrey in close proximity, such that there is no occurrence within the grant of coverage in the policy of insurance, and judgment finding no duty to indemnify and defend Decker should be entered.

"IV. In the alternative, the trial court erred in failing to, in fact, make findings of fact and conclusions of law following the coverage trial to the bench, such that the judgment entry of the trial court deferring to the outcome of a trial in another case in which plaintiff–appellant Nationwide is not a party, should be reversed and the case remanded to the trial court for findings of fact and conclusions of law based solely upon the evidence before the court in the record of the coverage trial."

On the evening of March 10, 1995, Harvey Decker and Lawrence Pendrey were involved in a fight, initiated by Pendrey, at the Rib Room bar in Toledo, Lucas County, Ohio. The two men were acquaintances but, due to several incidents which had occurred between the two in the past, there existed "bad feelings" between them. In particular, Decker had accused Pendrey's wife of cheating at cards and had made a derogatory comment about her bust. In return, one evening at the Rib Room, Pendrey bought a round of drinks for everyone at the bar except Decker. Several witnesses testified below that in the weeks prior to the stabbing, Decker had stated that he was going to "mess up" Pendrey. Decker, however, denied making these statements. On the evening of the incident involved herein, Pendrey was at the Rib Room with his wife, Sharon L. Pendrey, administrator of the estate of Lawrence Pendrey, and Decker was at the bar, meeting with friends. At approximately 10:00 p.m., Pendrey approached Decker, who was sitting on a bar stool at the end of the bar, and initiated an altercation. Witnesses indicated that Pendrey first took a swing at Decker and then the two became engaged in a scuffle. During the scuffle, Pendrey, the larger of the two men, had Decker in a headlock and was hitting his head, with Decker's hands trapped behind his back. William Boddy, the owner of the bar, and another patron attempted to break up the fight. During the course of the fight, Decker removed an eleven-inch buck knife with a four-and-three-quarters-inch blade from his back pants pocket and stabbed Pendrey once in the chest. The knife is not a switch blade but requires the holder to manually press a release and open the blade with both hands. Decker testified below that he did not intend to stab Pendrey but simply wanted to show Pendrey the knife to get Pendrey to stop hitting him. At one point in the fight, however, there was a pause in Pendrey's assault and Decker moved the knife forward a few inches. Pendrey then released his grip on Decker and it became apparent that Pendrey had been stabbed. Pendrey died as a result of a single stab wound to his chest that pierced his heart.

Subsequently, Decker entered a plea pursuant to *North Carolina v. Alford* (1970), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162. The record, however, does not reveal, and the parties differ as to, the offense with which Decker was convicted. Appellant contends that Decker was convicted of voluntary manslaughter, while

appellees assert that he was convicted of involuntary manslaughter. On June 14, 1995, appellee Sharon L. Pendrey, as the administrator of the estate of Lawrence Pendrey and as Pendrey's spouse, and Mark Pendrey, as the co-administrator of the estate, filed a wrongful death action in the Lucas County Court of Common Pleas, case No. 95–1616, against Decker and his wife Nadine.[1] The complaint alleged that Pendrey's death was a direct and proximate result of Decker's negligent and/or intentional assault of Pendrey.

At the time of the altercation, Decker was a named insured under a home-owners' insurance policy issued by Nationwide, policy No. 92HO958–418. That policy includes personal liability coverage and reads:

"We will pay damages the insured is legally obligated to pay due to an occurrence.

"We will provide a defense at our expense by counsel of our choice. We may investigate and settle any claim or suit. Our duty to defend a claim or suit ends when the amount we pay for damages equals our limit of liability."

An "occurrence" is defined by the policy as "bodily injury or property damage resulting from an accident, including continuous or repeated exposure to the same general condition." The term "accident" is not defined by the policy; however, the policy exclusions applicable to the personal liability coverage provide:

"1. Coverage E—Personal Liability * * * do[es] not apply to bodily injury or property damage:

"a. caused intentionally by or at direction of an insured, including willful acts the result of which the insured knows or ought to know will follow from the insured's conduct."

Pursuant to this policy, Nationwide provided Decker with a defense in case No. 95–1616 but with a reservation of rights. Nationwide then filed the instant declaratory judgment action seeking a determination of its rights and obligations under the insurance policy at issue. Specifically, Nationwide sought a declaration that it was not required further to provide a defense to Decker in case No. 95–1616.

During the proceedings below, the trial court denied Nationwide's motion for summary judgment and the case proceeded to a trial to the bench. A pretrial brief submitted by Nationwide, as well as post-trial briefs submitted by all of the parties, identify the issues to be determined by the court as follows: (1) did

---

1. The allegations regarding Harvey Decker's wife Nadine Decker related to an alleged fraudulent conveyance of Harvey Decker's interest in their home to Nadine. That count, however, was ultimately dismissed without prejudice by Pendrey.

Decker intentionally cause Pendrey's death or should he have known that his actions would cause Pendrey's death so as to preclude Nationwide's duty to defend and indemnify, (2) did Decker act in self-defense, and (3) if Decker acted in self-defense, is that finding binding in the underlying tort action, rendering the issues of Nationwide's duty to defend and indemnify moot. At the beginning of the trial below, the court acknowledged that these were the issues to be determined. The parties then presented their cases through the testimony of numerous witnesses.

Following the trial, Nationwide filed a request for written findings of fact and conclusions of law pursuant to Civ.R. 52. On November 18, 1996, the trial court filed its "findings of fact, conclusions of law, and judgment entry." In the findings of fact portion of that decision, however, the court simply set forth the evidence presented at the trial and noted where the various witnesses' testimony conflicted. In its conclusions of law, the court noted that while coverage does not exist for damages caused by intentional torts, the Supreme Court of Ohio determined in *Preferred Mut. Ins. Co. v. Thompson* (1986), 23 Ohio St.3d 78, 81, 23 OBR 208, 210–211, 491 N.E.2d 688, 691, that "[n]o purpose is served, however, by denying coverage to an insured who, while acting in self-defense, intentionally injures another." The trial court then determined:

"7. Decker intentionally used his knife during the physical altercation be-. tween himself and the decedent although possibly in self-defense, and a determination of whether Decker's actions constituted an intentional tort should be made in *Pendrey v. Decker*, Lucas C.P. No. CI95–1616. Nationwide shall provide a defense for Harvey Decker but will only be required to pay a judgment rendered against him if the judgment is based solely upon Pendrey's negligence claim (*i.e.* if a finding is made in *Pendrey v. Decker, supra,* that Harvey Decker did not act in self-defense, but committed an intentional tort against decedent, Nationwide will be relieved of its obligation to pay any judgment on Harvey Decker's behalf). See *Thompson, supra.*"

Accordingly, the trial court held that Decker intentionally used the knife in the altercation but refused to determine whether he intentionally caused Pendrey's death or should have known that his actions would cause Pendrey's death. The court also refused to determine whether Decker had acted in self-defense. In its judgment entry, the court then noted that its ruling was a full and complete adjudication of all the genuine issues in controversy between the parties with respect to any duties owed by Nationwide to Decker. It is from this judgment that Nationwide appeals.

 Because we find the fourth assignment of error dispositive of this appeal, we will address it first. Therein, Nationwide asserts that the trial court erred in

failing to enter separate findings of fact and conclusions of law on the issues which the parties agreed to try to the court. We agree.

As stated above, the findings of fact set forth by the trial court are nothing more than a recitation of the evidence presented at the trial below, including the contradictory witness testimony. Although we will not recite all of the trial court's findings of fact herein, the following are typical of the findings in the decision and illustrate our point:

"3. Although there was evidence presented that within a week to two weeks prior to the incident Decker commented to Tom Neeb ('Neeb') he was going to 'mess up' decedent, Neeb did not feel it was necessary to warn anyone about the comment, including decedent, nor did he consider the comment to be 'vicious.' Decker denies that he made such a comment.

"4. Although there was evidence presented that approximately one week prior to the incident Decker told Paul Zimmerman ('Zimmerman') to tell decedent he was looking for him and he was 'going to get him,' and Zimmerman relayed this statement, in whole or in part, to decedent, Decker did not make a more specific threat nor did he mention the use of a weapon. Decker denies that he made such a statement.

"5. Although there was evidence presented that approximately three weeks prior to the incident Decker, upset over his brother's death, displayed a knife to Irene Bee and stated that he was 'going over the edge' and that he would kill anyone who talked about his brother, Decker made no reference to decedent. Decker does not recall telling her that he felt like he was 'going over the edge' and denies telling her that he would kill anyone who said anything about his brother."

Civ.R. 52 mandates that when questions of fact are tried to the court, and one of the parties requests findings of fact and conclusions of law, "the court shall state in writing the conclusions of fact found separately from the conclusions of law." "Findings of fact should consist of a simple declaration of the ultimate facts in the case * * *." *Freeman v. Westland Builders, Inc.* (1981), 2 Ohio App.3d 212, 214, 2 OBR 231, 234, 441 N.E.2d 283, 287. Simply setting forth the evidence that was presented at trial will not suffice. *Id.* The failure to comply with the requirements of Civ.R. 52 is reversible error. *In re Adoption of Gibson* (1986), 23 Ohio St.3d 170, 172, 23 OBR 336, 337, 492 N.E.2d 146, 147–148. Although it has been held that such failure can constitute harmless error "when the record, taken as a whole, along with the court's order provides an adequate basis to dispose of all the claims presented," *Finn v. Krumroy Constr. Co.* (1990), 68 Ohio App.3d 480, 487, 589 N.E.2d 58, 63, that is not the case herein.

In filing a declaratory judgment action, Nationwide sought a determination of its rights and obligations under the insurance policy at issue. Sharon and Mark Pendrey, co-administrators of Lawrence Pendrey's estate and the plaintiffs in the tort action, were parties to the declaratory judgment action. All of the parties and the court agreed that the specific issues stated above would be determined in the declaratory judgment action and were required for a determination of whether Nationwide had a duty to defend or indemnify Decker in the underlying tort action. The parties specifically tried these issues to the court and presented the court with ample evidence to make a simple declaration of the ultimate facts in the case. In *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118, paragraph one of the syllabus, the Supreme Court of Ohio held:

"An insurer may maintain a declaratory judgment action under R.C. Chapter 2721 for purposes of establishing its rights and obligations under a contract of insurance. The insurer, if proceeding in good faith, is entitled to bring such an action for purposes of adjudicating its duty to defend and/or indemnify its insured in a tort action brought by a third party, even where the underlying tort complaint alleges conduct within the coverage of the contract of insurance."

Accordingly, the trial court erred in failing to make findings of fact and the fourth assignment of error is well taken.

Given our ruling on the fourth assignment of error, we find the first, second, and third assignments of error to be moot.

On consideration whereof, the court finds that substantial justice has not been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is reversed. This cause is remanded to that court for further proceedings consistent with this decision. Court costs of this appeal are assessed to appellees.

*Judgment reversed*
*and cause remanded.*

MELVIN L. RESNICK, P.J., GLASSER and SHERCK, JJ., concur.