OPINION
{¶ 1} On September 13, 2004, Daniel Rachel filed a civil lawsuit against appellant, HPE, Inc. Appellant was insured under a commercial general liability policy and an umbrella policy issued by appellee, Cincinnati Insurance Company. Appellant requested Cincinnati to defend and indemnify it in the lawsuit.
 {¶ 2} On October 25, 2004, Cincinnati filed a declaratory judgment action to determine its duty under the policies. Both parties filed motions for summary judgment. By judgment entry filed January 28, 2005, the trial court found in favor of Cincinnati.
 {¶ 3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 4} "THE INSURANCE COMPANY'S DUTY TO DEFEND IS SEPARATE AND DISTINCT FROM ITS DUTY TO INDEMNIFY, AND THE DUTY TO DEFEND IS BROADER THAN THE DUTY TO INDEMNITY AND EXISTS WHEN THE POLICY CONTAINS LANGUAGE PROMISING TO DEFEND THE INSURED AGAINST GROUNDLESS, FALSE OR FRAUDULENT CLAIMS."
 II {¶ 5} "WHERE THE CONDUCT WHICH PROMPTED THE UNDERLYING SUIT BRINGS THE ACTION WITHIN THE POLICY COVERAGE THE INSURANCE COMPANY HAS THE DUTY TO PROVIDE COVERAGE."
 I, II {¶ 6} Appellant claims the trial court erred in finding Cincinnati did not owe a duty to defend and/or indemnify under its commercial general liability and umbrella policies. We disagree.
 {¶ 7} Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56. Said rule was reaffirmed by the Supreme Court of Ohio in State ex rel. Zimmerman v. Tompkins, 75 Ohio St.3d 447, 448,1996-Ohio-211:
 {¶ 8} "Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex. rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511,628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 4 Ohio St.3d 466, 472, 364 N.E.2d 267, 274."
 {¶ 9} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35.
 {¶ 10} In Willoughby Hills v. Cincinnati Insurance Co. (1984),9 Ohio St.3d 177, 180, the Supreme Court of Ohio held the following:
 {¶ 11} "[W]here the insurer's duty to defend is not apparent from the pleadings in the case against the insured, but the allegations do state a claim which is potentially or arguably within the policy coverage, or there is some doubt as to whether a theory of recovery within the policy coverage had been pleaded, the insurer must accept the defense of the claim."
 {¶ 12} In Sanderson v. Ohio Edison Co., 69 Ohio St.3d 582,1994-Ohio-379, paragraph one of the syllabus, the Supreme Court of Ohio discussed an insured's duty to defend as follows:
 {¶ 13} "An insurance policy which states that the insurer is obligated to defend in any action seeking damages payable under the policy against the insured, even where the allegations are groundless, false or fraudulent, imposes an absolute duty upon the insurer to assume the defense of the action where the complaint states a claim which is partially or arguably within policy coverage."
 {¶ 14} In Cincinnati Insurance Company v. Anders, 99 Ohio St.3d 156,2003-Ohio-3048, ¶ 17-21, the Supreme Court of Ohio reviewed the law on the duty to defend and stated the following:
 {¶ 15} "In Motorists Mut. Ins. Co. v. Trainor (1973), 33 Ohio St.2d 41, 62 O.O.2d 402, 294 N.E.2d 874, this court held that under a liability insurance policy the scope of the allegations in the complaint against the insured determines whether an insurance company has a duty to defend the insured. We held that `where the complaint brings the action within the coverage of the policy the insurer is required to make defense, regardless of the ultimate outcome of the action or its liability to the insured.' Id. at paragraph two of the syllabus.
 {¶ 16} "We expanded on Motorists in Willoughby Hills v. CincinnatiIns. Co. (1984), 9 Ohio St.3d 177, 9 OBR 463, 459 N.E.2d 555, stating that `the duty to defend need not arise solely from the allegations in the complaint but may arise at a point subsequent to the filing of the complaint.' Id. at 179, 9 OBR 463, 459 N.E.2d 555. Where the allegations state a claim that falls either potentially or arguably within the liability insurance coverage, the insurer must defend the insured in the action. Id. at 180, 9 OBR 463, 459 N.E.2d 555.
 {¶ 17} "The Willoughby Hills policy stated that the insurance company would indemnify the insured against liability for damage caused by an `occurrence' and would defend against any action against the insured seeking damages resulting from an occurrence `"even if any of the allegations of the suit are groundless, false or fraudulent."' WilloughbyHills, 9 Ohio St.3d at 177, 9 OBR 463, 459 N.E.2d 555, quoting the insurance policy.
 {¶ 18} "In Preferred Risk Ins. Co. v. Gill (1987), 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118, the court distinguished Willoughby Hills. InPreferred Risk, the insurance company sought a declaratory judgment that it had no duty to defend an insured against a tort claim framed in terms of negligence brought by the parents of a child murdered by the insured. The insurance company denied coverage, as the policy in question expressly excluded coverage for any intentional act, and intent was an element of the crime of which the insured had been convicted.
 {¶ 19} "We held that allegations in the complaint did not justify the application of the Willoughby Hills rule by stating, `[W]here the conduct which prompted the underlying * * * suit is so indisputably outside coverage, we discern no basis for requiring the insurance company to defend or indemnify its insured simply because the underlying complaint alleges conduct within coverage.' Preferred Risk, 30 Ohio St.3d at 113, 30 OBR 424, 507 N.E.2d 1118. In distinguishing Preferred Risk fromWilloughby Hills, we also observed that unlike the policy in WilloughbyHills, the Preferred Risk policy did not contain language promising to defend the insured against groundless, false, or fraudulent claims. Id. at 114, 30 OBR 424, 507 N.E.2d 1118."
 {¶ 20} Based upon the cited language, we must first examine the allegations in the underlying complaint in order to properly consider the trial court's decision. Paragraph eleven of the complaint alleges the "Plaintiff was terminated because of his disability and/or age and not for cause, as the Defendant failed to reasonably accommodate the Plaintiff by failing to allow the Plaintiff to return to work, despite the fact he was able to perform jobs with the Defendant." Paragraph twelve claims the defendant's "lack of work" excuse was merely "pretext for discrimination as he was actually discharged on account of his perceived disability and/or his age." The causes of action are listed as disability/perceived disability discrimination in violation of R.C.4112.02, age discrimination in violation of R.C. 4112.14 and R.C. 4112.99, intentional infliction of emotional distress based upon age discrimination and breach of public policy.
 {¶ 21} Despite appellant's protest to the contrary, there is no other way to characterize the complaint than as an employment dispute under R.C. Chapter 4112. et seq. Our inquiry must resolve the following:
 {¶ 22} 1. Whether the allegations in the complaint state a claim that falls either "potentially or arguably" within the insurance coverage.
 {¶ 23} 2. Whether the policies in this case provide for defense against allegations that are "groundless, false or fraudulent" if the allegations are arguably within the insurance coverage.
 {¶ 24} 3. Whether there is some doubt of the theory of recovery within the complaint.
 {¶ 25} With these three inquiries in mind, we will examine the two policies sub judice.
 COMMERCIAL GENERAL LIABILITY POLICY {¶ 26} The commercial general liability policy includes an Employment-Related Practices Exclusion, GA 321 01 95, which contains specific exclusions for bodily injury and personal injury arising out of any employment termination, related policies, practices, acts or omissions:
 {¶ 27} "This endorsement modifies insurance provided under the following:
 {¶ 28} "COMMERCIAL GENERAL LIABILITY COVERAGE PART
 {¶ 29} "A. The following exclusion is added to paragraph 2., Exclusions of COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I Coverages):
 {¶ 30} "This insurance does not apply to:
 {¶ 31} "1. `Bodily injury' to:
 {¶ 32} "a. A person arising out of any:
 {¶ 33} "(1) Refusal to employ that person;
 {¶ 34} "(2) Termination of that person's employment; or
 {¶ 35} "(3) Other employment-related practices, policies, acts or ommissions (sic) including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or
 {¶ 36} "b. The spouse, child, parent, brother or sister of that person as a consequence of `bodily injury' to that person at whom any of the employment-related practices described in paragraphs (1), (2) or (3) above is directed.
 {¶ 37} "This exclusion applies:
 {¶ 38} "a. Whether the insured may be liable as an employer or in any other capacity; and
 {¶ 39} "b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.
 {¶ 40} "B. The following exclusion is added to paragraph 2., Exclusions of COVERAGE B — PERSONAL AND ADVERTISING INJURY LIABILITY (Section I — Coverages):
 {¶ 41} "This insurance does not apply to:
 {¶ 42} "1. `Personal injury' to:
 {¶ 43} "a. A person arising out of any:
 {¶ 44} "(1) Refusal to employ that person;
 {¶ 45} "(2) Termination of employment; or
 {¶ 46} "(3) Other employment-related practices, policies, acts or ommissions (sic) including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or
 {¶ 47} "b. The spouse, child, parent, brother or sister of that person as a consequence of `personal injury' to that person at whom any of the employment-related practices described in paragraphs (1), (2) or (3) above is directed.
 {¶ 48} "This exclusion applies:
 {¶ 49} "a. Whether the insured may be liable as an employer or in any other capacity; and
 {¶ 50} "b. To any obligation to share damages with or repay someone else who must pay damages because of the injury."
 {¶ 51} The plain and unambiguous language of the policy excludes some employment-related practices. The allegations of the complaint place all claims squarely within R.C. Chapter 4112 et seq. and public policy considerations of employment discrimination. Upon review, we conclude there is no colorable potential or arguable claim in the complaint that is not specifically excluded by the commercial general liability policy.
 COMMERCIAL UMBRELLA POLICY {¶ 52} The commercial umbrella policy defines "personal injury" in pertinent part as "Discrimination, unless insurance coverage therefore is prohibited by law or statute." See, Definitions, Section V(10)(f).
 {¶ 53} In addition, the policy provides for the "right and duty to defend" on claims arising out of the policy "even if the allegations are groundless, false, or fraudulent, when":
 {¶ 54} "a. The applicable limits of the `underlying insurance' and any other insurance have been exhausted by payment of claims; or
 {¶ 55} "b. Damages are sought for `bodily injury', `property damage', `personal injury' or `advertising injury' which are not covered by `underlying insurance' or other insurance."
 {¶ 56} At first blush, there appears to be coverage for the allegations in the complaint. However, the policy includes the following exclusions at Section I(B)(7), (8) and (9):
 {¶ 57} "This policy does not apply to:
 {¶ 58} "7. Employer's Liability Limitation
 {¶ 59} "a. An `employee' of the insured arising out of and in the course of employment by the insured or performing duties related to the conduct of the insured's business; or
 {¶ 60} "b. The spouse, child, parent, brother or sister of that `employee' as a consequence of a. above.
 {¶ 61} "This exclusion applies:
 {¶ 62} "a. Whether the insured may be liable as an employer or in any other capacity; and
 {¶ 63} "b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.
 {¶ 64} "This exclusion does not apply when such insurance is provided by a valid and collectible policy listed in the Schedule of Underlying Policies, or would have been provided by such listed policy except for the exhaustion by payment of claims of its limits of insurance, and then only for such hazards for which coverage is provided by such `underlying insurance.'
 {¶ 65} "8. Employment Related Practices
 {¶ 66} "`Bodily Injury' or `personal injury' to:
 {¶ 67} "a. A person arising out of any:
 {¶ 68} "(1) Refusal to employ that person;
 {¶ 69} "(2) Termination of that person's employment; or
 {¶ 70} "(3) Other employment-related practices, policies, acts or omissions including but not limited to coercion, criticism, demotion, evaluation, failure to promote, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or
 {¶ 71} "b. The spouse, child, parent, brother or sister of that person as a consequence of `bodily injury' or `personal injury' to that person at whom any of the employment-related practices described in Paragraphs (1), (2), or (3) above is directed.
 {¶ 72} "This exclusion applies:
 {¶ 73} "a. Whether the insured may be liable as an employer or in any other capacity; and
 {¶ 74} "b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.
 {¶ 75} "9. Expected or Intended Injury
 {¶ 76} "`Bodily Injury' or `property damage' which may reasonably be expected to result from the intentional or criminal acts of the insured or which is in fact expected or intended by the insured even if the injury or damage is of a different degree or type than actually intended or expected.
 {¶ 77} "This exclusion does not apply to `bodily injury' resulting from the use of reasonable force to protect persons or property."
 {¶ 78} Despite the language referenced supra of providing a defense for "groundless, false, or fraudulent" claims, we find the specific exclusions clearly exempt coverage for the potential or possible allegations in the complaint. The "claims" as set forth in the complaint must still be within the possible realm of coverage. The claims sub judice are not.
 {¶ 79} Upon review, we find the trial court did not err in granting summary judgment to Cincinnati.
 {¶ 80} Assignments of Error I and II are denied.
 {¶ 81} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
By Farmer, J. Hoffman, P.J. and Edwards, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed.